IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO.:   7:08-CR-24 (HL) |
| | : | |
| vs. | : | |
| | : | |
| J. DARRELL WATSON | : | |
|     Defendant | : | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

Darrell Watson moves the Court to dismiss the above indictment upon the following grounds:

**THE ORIGINAL INDICTMENT**

Darrell Watson was indicted on June 18, 2008 in two counts:

Count One of the indictment alleged that Darrell Watson committed perjury before the grand jury on September 19, 2007 when he answered questions concerning the conversation that he had with "CC #1" on April 30, 2007.

The first specification was:

[...]

"Q: Did CC #1 make any phone calls while you were in the office?

A: ***I don't know the answer to that.***

Q: Do you know whether Mr. B's case was assigned to CC #1 or some other judge?

A: It was assigned to another judge.

Q: Did he call that other judge?

A: ***I couldn't tell you. Honestly, I don't know. I don't know.***

> **[GJ:7]**
> Q: Do you recall whether he called Judge P. and told him that there were some important people behind Mr. B. and that he might want to take some action on the case?
> A: **No, Ma'am. He may have. I don't recall that."**

The indictment alleged that this was not true because CC # 1 did in fact make a phone call to Dane Perkins (DP).

The second specification of perjury was:
> [...]
> "Q: Have (Had) you given any thought or put out any feelers to running for sheriff?
> A: **Yes, Ma'am. [GJ:6]**
> Q: Did you and CC #1 discuss that?
> A: **I never did because** *we have been personal family friends for years.*

The indictment alleged that Watson did discuss his plans to run with CC #1 and therefore committed perjury.

Count Two of the indictment alleged that Watson of obstructed justice because he attempted to *"mislead the grand jury into believing that he had sought CC #1's assistance for one stated purpose (seeking redress of the alleged mistreatment of an arrestee, M.B.), rather than the actual purpose (to advance his own goal of becoming the sheriff of Lanier County, Georgia, by fixing cases as a favor to a defendant and his family)."*

The defendant entered his plea of not guilty on June 23, 2008.

## THE SUPERSEDING INDICTMENT

Count One charges perjury.  The first specification of perjury:

> "Q:   Did CC #1 make any phone calls while you were in the office?
> 
> A:   **I don't know the answer to that.**
> 
> Q:   Do you know whether Mr. B's case was assigned to CC #1 or some other judge?
> 
> A:   It was assigned to another judge.
> 
> Q:   Did he call that other judge?
> 
> A:   **I couldn't tell you.  Honestly, I don't know.[...]  I don't know. [GJ:7]**
> 
> Q:   You don't recall whether he called Judge P. and told him that there were some important people behind Mr. B. and that he might want to take some action on the case?
> 
> A:   **No, Ma'am.  He may have.  I don't recall that.**
> 
> Q:   If he said that, who would be the important people?
> 
> A:   I don't know.  It wouldn't be me.
> 
> Q:   OK.  and in this conversation, did CC#1 tell you flatly, the case is not assigned to me, CC #1; it's assigned to DP?
> 
> A:   **No, Sir, I don't believe he did.  I found out later on through the stepfather that DP heard the case and it was still continued on. [...]**

The second specification of perjury:

> "Q:   Did CC #1 tell you anything about what he could do to help you in this situation with ...[GJ:6]
>
> A:   **He told me that - he said, I can't get him out of the DUIs,** and I told him - this is to the best of my memory - I told him - I said, "I knew the family wasn't wanting him to get out of the DUIs.[...] they told me that. He said, but we don't want him to go to prison if we can keep him from it. That was my sole purpose to go. I did not ask him to get out of the DUIs."

Count Two charges Obstruction of Justice in that Darrell Watson:

> "attempted to mislead the grand jury into believing that he had sought CC #1's assistance for one stated purpose (seeking redress of the alleged mistreatment of an arrestee, M.B.), rather than the actual purpose (to prevent M.B. from serving jail or prison time for D.U.I. offenses)."

### STATEMENT OF FACTS

On April 30, 2007, Darrell Watson went to Judge Brooks Blitch's office in Homerville, Georgia to request on behalf of Michael Branch, a lifelong friend, that, if possible, Michael's stepson, Mike Beecher, be spared from a prison sentence because of a D.U.I. which was not his first.

In July of 2007, a federal grand jury subpoena was issued to Darrell Watson and placed on the door of his house. On or about the same day, Nick Norton, sheriff of Lanier County, Georgia, confronted Darrell Watson and asked him about the federal subpoena on his door. At that time, Watson was considering running for sheriff of Lanier County against Norton. Watson had not seen

the subpoena. When he came home, Watson found the subpoena on the door, as Norton foretold. (Watson was later told that he did not have to appear.)

On August 28, 2007, Watson was personally served with another subpoena for the federal grand jury in Macon by Tony Smith of the F.B.I. While Smith was serving the subpoena, Smith asked Watson why he was opposed to Nick Norton as sheriff and expressed his support for Norton. But, prosecutors asked Watson, "pointed question" about his conversation with Blitch without telling Watson that they were taking those questions from secret tape recordings of the conversation, and without telling Watson that they were setting him up for a perjury charge.

On September 19, 2007, Darrell Watson appeared before the grand jury in Macon, Georgia. He was told at the outset that he was not a target of the investigation and was given no warnings.

On April 28, 2008, Watson qualified to run for sheriff of Lanier County against Nick Norton.

The primary in which Watson was going to run against Norton was scheduled for July 15, 2008.

On June 18, 2008, Indictment No: 5:08-CR-32-HL, charging Darrell Watson with perjury and obstruction of justice, was returned in the Macon Division of this court.

On July 15, 2008, Watson lost the sheriff's race to Norton by 26 votes.

On July 17, 2008, the parties came before the Court in Macon, Georgia and the government announced ready for trial on Indictment No: 05:08-CR-32-HL.

On August 25, 2008, the parties came before the Court in Macon, Georgia and the government announced ready for trial on Indictment No: 05:08-CR-32-HL.

On August 29, 2008, a superseding indictment was filed which deleted any reference to the sheriff's race, although two of the three charges in the previous indictment were based upon discussions of the race for sheriff.

## ARGUMENT AND CITATION OF AUTHORITY
## I.
## THE INDICTMENT SHOULD BE DISMISSED FOR PROSECUTORIAL MISCONDUCT.

5 U.S.C §7323(a)(1) provides that an employee of the government may not "*use his official authority or influence for the purpose of interfering with or effecting the result of an election.*" U.S.C. §7323(a)(1).

Watson testified before the grand jury on September 19, 2007.  Everything in his first indictment <u>and</u> the superseding indictment is based upon his testimony before that grand jury and was known to the government since September 19, 2007.

The first indictment was maliciously brought.

Specification of perjury #2 of Count One of the first indictment was that Watson lied to the jury when he was asked whether he had discussed his consideration of running for sheriff with "CC #1".  The indictment alleged that Watson's answer was:

> "Q:   Did you and CC #1 discuss that?
> A:   ***I never did because*** *we have been personal family friends for years.*"

The indictment alleged that this was perjury because Watson had indeed discussed his plans to run for sheriff with CC #1.

The allegation of the indictment was false and was known to be false by the government.

Instead of saying, *"I never did because we have been personal family friends for years."*, Watson actually said, *"I know we did because we have been personal family friends for years."*

The audio is clear. He clearly says, *"I know we did..."*

The answer as alleged in the indictment makes no sense. *"I never did (discuss my plans to run for sheriff) because we have been personal family friends for years."* is nonsensical. The only logical way to read the answer is, *"I know we did because we have been personal family friends for years."*

The audio and the transcript show that the prosecutor questioning Watson before the grand jury understood that Watson's answer to this question was that he <u>had</u> discussed his plans to run with Judge Blitch:

> *"Mr Crane:    And was it in that same conversation that you told him that you were going to run for sheriff?*
>
> *Mr. Watson:   Sir, it probably was. It's been common knowledge that I was probably going to run for sheriff. Judge Blitch has been a friend of myself through the court system and personally for years, so we've discussed this in the past."*
>
> *Mr. Crane:    So you were passing along a rumor about somebody investigating him, and then you just happened to mention that you were going to run for sheriff?*
>
> *Mr. Watson:   No, sir. I was not passing on a rumor they were investigating him. If I had seen Judge Perkins, I would have told him the same thing I told Judge*

> *Blitch; hey, I understand that the sheriff's got your office bugged. I was not doing it to protect Blitch, but I do not see Judge Perkins as much as I seen Judge Blitch."*

During the same examination, before the same grand jury:

> *"Ms. McEwen:    You wouldn't think that you and the judge, just having talked about your plans for running for sheriff, that the running for sheriff, that the judge would have any interest in keeping you on his side politically, so to speak?"*

Each of the assistant US attorneys questioning Watson before the grand jury asked questions after he had told them, *"I know we did..."* which acknowledged their understanding that he had told them that he had discussed his run for sheriff with Judge Blitch. Notwithstanding that, the government indicted Watson based upon a lie: that he told the grand jury, *"I never did..."*

In Count Two of the first indictment, the government charged that Watson had obstructed justice by leading the grand jury to believe that he had, *"...sought CC #1's assistance for one stated purpose (seeking redress of the alleged mistreatment of an arrestee), rather than the actual purpose (to advance his own goal of becoming the sheriff of Lanier County, Georgia, by fixing cases as a favor to a defendant and his family)."*

This indictment was returned on June 18, 2008, less than one month before the primary election for sheriff.

On June 13, 2008, Michael and Sheila Branch, the stepfather and mother of Mike Beecher,

on whose behalf Watson had gone to Blitch, were interviewed by government agents. During this interview the Branches told the agents that Michael Branch and Darrell Watson had been friends for most of their lives and that was the reason they had approached Watson to speak to Blitch.

The prosecutors knew when the indictment was presented that Watson's purpose was a lifelong friendship and not aspirations to run for sheriff. Yet they alleged that his hidden and fraudulent purpose was otherwise.

The indictment cost Watson the sheriff's election. He lost by 26 votes.

The government announced on two occasion, since the election that it was ready for trial on its original indictment. But, on August 29, 2008, 11 days and 5 business days before the trial was scheduled, the government filed this superseding indictment.

The second specification of perjury which was originally based on the question of whether or not Watson and Blitch discussed Watson's plans to run for sheriff now disappears and another ambiguous charge is made.

The obstruction count - Count Two is rewritten to omit any reference to the race for sheriff.

It seems that once the indictment achieved its apparent purpose result of costing Darrell Watson his race against Nick Norton for sheriff, all references to the race for sheriff have been deleted.

## II.
## THE GOVERNMENT RETURNED THIS INDICTMENT IN DEFIANCE OF THIS COURT'S ORDER.

In response to motions by the defendant, in the first indictment, the Court on August 5, 2008,

ruled that the use of "Co-Conspirator #1 (CC#1)" to refer to Judge Blitch, serves no purpose and its only effect is prejudice to the defendant because it implies that a conspiracy existed when none was alleged. The government was ordered to strike this. Notwithstanding this order of August 5, 2008, the prosecution has returned a superseding indictment of August 29, 2008 that contains the same allegations concerning "Co-conspirator #1 (CC #1)".

The government seems determined to have its own way as to who will control this case.

### III.
### COUNT TWO OF THE INDICTMENT IS INSUFFICIENT AS A MATTER OF LAW.

Count Two alleges obstruction of justice in that Watson attempted to mislead the grand jury into believing that he had sough Blitch's assistance to seek redress of an alleged mistreatment of Michael Beecher when his actual purpose was to prevent Michael Beecher from serving jail or prison time for D.U.I offenses. In support of this, in the same indictment, the same Count alleges as a part of the grand jury testimony:

> "Q: *Now you said you went to see CC #1 to try to get him a sentence of, I guess, straight probation or no jail time? [GJ:8]*
>
> A: *No jail time. That's what the mother and step father asked me would I do. They did not want to get him out of the D.U.I.s. they did not care if he had to stay at home every night, but they did not want him to go to prison if possible. That's the best I can remember on that."*

Also, in the same indictment, in Count One, from the same grand jury transcript, the government alleges that Watson told the grand jury:

> "A: *He told me that - he said, I can't get him out of the DUIs, and*

> *I told him - this is to the best of my memory - I told him - I said, "I knew the family wasn't wanting him to get out of the DUIs. [...] they told me that. He said, but we don't want him to go to prison if we can keep him from it.* ***That was my sole purpose to go.*** *I did not go to ask him to get out of the DUIs.*
> (Indictment, p. 7,8)

This defendant understands that the trial court in ruling on a motion to dismiss an indictment cannot rule on sufficiency of evidence. This motion is based upon the allegations of this indictment by this prosecution which flatly rebuts and disproves the allegations of Count Two.

According to the government's own indictment, the defendant stated that his sole purpose in going to see Judge Blitch was to prevent young Beecher from getting prison or jail time.

Count Two should be dismissed for the foregoing reasons.

## CONCLUSION

The first indictment was maliciously brought, based upon false allegations pertaining to the sheriff's race. Once that this indictment cost Watson the sheriff's race, a superseding indictment has been brought to cover the tracks of the prosecution in the first indictment, deleting all reference to the election, now a fait accompli.

The first indictment and this indictment were brought to intimidate and coerce this defendant into a plea agreement.

In either case, the indictment should be dismissed.

**CITATIONS OF AUTHORITY**

**United States v. Russell**, 411 US 423 (1973); **United States v. Haimowitz**, 725 F.2d 1561 (11th Cir., 1984); **Berger v. United States**, 295 US 78 (1935); **United States v. Eason**, 920 F.2d 731 (11th Cir., 1990); 5 USC §7323(a)(1); **United States v. Briggs**, 514 F.2d 794 (5th Cir. 1975).

Respectfully submitted,

S/ J. Converse Bright
J. Converse Bright
Georgia Bar #081900
Counsel for Defendant

101 E. Central Avenue, 4th Floor
Valdosta, Georgia 31601
O: (229) 247-7846
F: (229) 245-0693
jcblaw@bellsouth.net

**CERTIFICATE OF SERVICE**

I, J. Converse Bright, counsel for defendant, hereby certify that on this 4th day of September, 2008, I electronically filed the foregoing DEFENDANT'S MOTION TO DISMISS INDICTMENT using CM/ECF system which will send notification of such filing to the following:

Jim Crane
Asst. U.S. Attorney, M.D. Georgia
P.O. Box 366
201 West Broad Avenue
U.S. District Court, 2nd Floor
Albany, Georgia 31701

S/ J. Converse Bright
J. Converse Bright
Georgia Bar #081900
Counsel for Defendant

101 E. Central Avenue, 4th Floor
Valdosta, Georgia  31601
O: (229) 247-7846
F: (229) 245-0693
jcblaw@bellsouth.net